ELEAZER SMITH v. JAMES ABBOTT, ONE OF THE CREDI-
TORS, &c.

*Certiorari* to Salem Orphans' Court.

1. It is not *essential* that an affidavit made by a creditor to his account exhibited to the administrator of an insolvent estate, under the act, &c. show on its face or in the jurat, *where* it was sworn.
2. Such an affidavit is not considered as made in a matter *in* court; nor is it to be read as the basis of any motion on proceeding therein. A mere contingency that it may be brought before the court for consideration by an exceptant, does not give it that character.
3. A justice of the peace had the power (prior even to the act of Feb. 14, 1839) to administer such an oath, and all others of an analogous character, as an incident to his office.

At the term of June, 1837, of the Salem Court, M. Richman jr. as the administrator of Joel Abbott, dec. (who died insolvent) obtained a rule that " the creditors of said estate, exhibit to him under oath or affirmation, their claims and demands against the estate, in six months," according to the 3d section of the " act concerning the estates of persons who die insolvent." *R. L.* 766.

James Abbott alleging himself to be one of the creditors of said estate, exhibited to the said administrator under oath, (as was said) the following account :

" Estate of Joel Abbott in account,

|  |  | To James Abbott, | Dr. |  |
|---|---|---|---|---|
| 1833, Dec. 5th, | To a Judgment Bond, |  | $400 |  |
| 1837, Nov. 25th, | Interest, |  | 48 |  |
| 1833, May 22d, | To a note, |  | 200 |  |
|  | Interest, |  | 30 |  |
|  | Book account, for hay, |  | 20 | 77 |
|  |  |  | $698 | 77 |

" Personly appere befour me, James Abbott, an he being duly sworn according to law, deposeth and saith that the Abo' account is just and tru, and justly owing, this deponent, on further saith not.

JAMES ABBOTT.

Taken and sworn befou me, the }
    25 day of Nov. 1837.        }
CHARLES ELWELL, *J. of the Pec.*

Upon the coming in of the account, and this claim, Eleazer Smith, one of the creditors, obtained a rule to file exceptions to the same, and the other claims under the 6th section of the act. And amongst other exceptions, filed the following:

" Because the pretended oath or affidavit to said claim, or demand so exhibited, appears to have been taken before Charles Elwell, Justice of the Peace, who had not and has not any legal jurisdiction, power or authority to take or administer an oath or affirmation in such a case. There is no venue or place where said oath was taken or administered, apparent on the said affidavit."

The exceptions were tried and argued before the Judges of Salem Orphans' Court, at June Term, 1839, and the above exception urged before them. The court overruled the exception and allowed the claim.

The exceptant brings his *Certiorari* and again files the same, amongst other reasons for the reversal of the order and decree of the court.

*Alphonso L. Eakin* for the plaintiff.

The act, *R. L.* 766 *s.* 3, requires the " claims to be exhibited under oath or affirmation," without stating before whom it shall be taken. The 6th section authorizes " exceptions to be filed against the claim or demand of any creditor, exhibited, &c. and the said court shall proceed and hear, &c." " And upon such exceptions decree and determine, &c."

In the absence of statutory regulation, we must resort to the common law usage and practice, which always required the affidavit to be taken before the court, or an officer of such court where the matter will be heard, and which has jurisdiction of the subject matter, 1 *Harr.* 151 ; 2 *Gr.* 185 ; 2 *Arch. Pr.* 281 ; 4 *T. R.* 285, 291 ; 2 *Salk.* 461 ; 3 *Gr.* 432. As the exceptions (by statute) to such claim, must be tried by the Orphans' Court, such oath should have been taken before one of the Judges of that court. *Elm. Dig.* 172 ; *citing* 1 *Harr.* 147.

It has been holden by this court, that Justices of the Peace were not *ex officio*, authorized to administer oaths of a civil nature, or in the course of civil proceedings unless expressly con-

ferred by statute, 2 *Gr.* 183, 5, 6 ; *El. Dig.* 299, and that this & other courts would not receive an affidavit unless made before such court or one of its proper officers, for that purpose, *Ib.* 184, and cases there cited.

The affidavit must be considered as a nullity, not only on that account, but because it does not appear where it was taken. The hieroglyphical characters attached to the name at the jurat will not aid the matter. As this court will not take notice of his judicial appointment, 5 *Halst.* 244, neither of an affidavit unless it shall appear to have been taken within the jurisdiction of this State, unless under some statutory direction. 1 *Arch. Pr.* 55 ; 2 *Ib.* 281 ; 2 *Gr.* 154 ; *Halst. Dig.* 174, *pl.* 5 ; 3 *M. and S.* 493.— And most of the foregoing authorities concur that perjury could not be assigned on such affidavit.

DAYTON, J. This case was submitted at the last term, upon the written argument of the counsel for the plaintiff in *Certiorari.* No person having appeared on behalf of the creditor. Two questions are presented upon the affidavit attached to the creditor's claim, in conformity with the statute.

I. It is objected that the affidavit does not show on its face, or in the *jurat,* at what place it was taken.

II. That it was made before a Justice of the Peace, who had no authority to administer the oath.

For these two reasons it is insisted that the affidavit is radically defective ; and that the Orphans' Court committed an error in admitting this creditor to his share or dividend of the insolvent's estate.

It is no doubt proper and right that every affidavit should show on its face *where* it was taken. It is one of its formal parts, and if taken by an officer of a limited territorial jurisdiction (as a Justice of the Peace) it should appear to have been taken within the bounds of his county. If by a Justice of the Supreme Court, the State being named would satisfy the demands of form —though there are some reasons why it is well to state in the jurat (as our books of practice generally do) the precise place where it is sworn. The present question, however, is not whether this affidavit contains all the formal parts of an affidavit, but whether for want thereof, it is a void thing.

Could or could not perjury be assigned upon it? That is the

question, and I have no doubt but that it could. I am aware that in the Court of King's Bench, no affidavit can be read which does not show in the *jurat, where* it was sworn. But this is merely a rule of practice adopted for the convenience of the Court. *Rex.* v. *The Justices of the West riding of Yorkshire,* 3 *Maule, and S.* 494. While in the Common Pleas, no such rule exists. *Symmers* v. *Wasar,* 1 *Bos. & P.* 105. I forbear to cite authorities upon this point, for it has heretofore received the consideration of this court, 2 *Green,* 260. It is enough to say, that the reason assigned for the adoption of the rule in the King's Bench, has no application to our practice, and cases are to be found even in the English books, which have dispensed wholly with the requisite that the place where sworn must appear in the jurat; as in *French* v. *Bellew,* 1 *Maule and S.* 302, where a defendant was held to bail, upon an affidavit sworn before the Chief Justice of the King's Bench of Ireland, although no place was named in the jurat. In the case of *Bennett* v. *The Rail Road Company,* 2 *Green,* 154, cited in the counsel's brief, it is true that the Chief Justice as a passing comment upon an affidavit, held it bad inasmuch as it did not appear where it was made, nor that it was made before any person authorized to administer an oath. But it does not follow, that he held it bad radically on each of these grounds: it was bad in form because the place where taken was not named, and it was bad in substance because it did not appear to have been sworn before a person authorized to administer an oath. But subsequent to the above case, this court has reviewed more deliberately, the law upon this point. In *Peltier ats. the Receivers of the Washington Banking Company,* 2 *Green,* 262, the same question was brought up on a motion to discharge a defendant on common bail, because it did not appear where the affidavit to hold to bail, was sworn. The Chief Justice in delivering the opinion of the court, said that the cases cited, did not go so far as to say that the affidavit was bad or insufficient, if the place of making it was not inserted, &c. that "the place where an affidavit was made, was a matter *in pais.*" And this objection to the affidavit, was therefore overruled. I do not mean to be understood as giving an opinion upon what shall be considered the requisites of an affidavit to be used in the progress of a cause, or as the foundation of some motion or proceeding in

court, where we cannot consistently depart from the matter in hand and go into an inquiry as to extraneous matter. It may often be advisable as a matter of practice, to overrule affidavits for want of form, which are in themselves valid, and upon which, perjury could be assigned.

That perjury could be assigned on the present affidavit, I have no doubt. In *Rex.* v. *Emden,* 9 *East,* 437, it was held that on an indictment for perjury, the place named in the jurat of the affidavit, is not conclusive as to the fact where it was in reality taken. Now if it be competent to show by evidence *dehors,* that it was taken elsewhere than it purports—or in other words if perjury may be assigned by showing that the place where it was taken, is falsely named, *a fortiori,* may perjury be assigned, where no place is named at all. It is not pretended that this affidavit was in point of *fact,* taken at an improper place; and it is not the duty of this court to presume it. Were the fact so, it is matter *in pais,* and the party can only have the benefit of it when the same shall be made to appear. The first exception therefore, is not in my judgment, well taken.

2. The more important exception remains to be examined.— Was the affidavit well taken by a Justice of the Peace?

I admit that on one or two occasions, when this or analogous questions have been before this court, it has been intimated without much argument, either by court, or counsel, that in no such case, has a Justice of the Peace, authority at all to administer an oath. But no case has ever been decided on that ground. In *Munn* v. *Merry and Harrison,* 2 *Green,* 184, the affidavit for an appeal was made, not before the Justice who tried the cause, but another; and the decision of this court that it was bad, was clearly right on that ground. It was in a matter or suit pending before another court. The remarks upon the powers of a Justice of the Peace, though in my judgment, wrong, were merely cumulative. So the case cited by counsel from 3 *Green,* 432, proves nothing, and the remarks of the court show only that on an appeal *pending in court,* an affidavit for the admission of new evidence, must be taken either in open court, or before one of the Judges at Chambers. *Scull and Thompson* v. *Alter,* 1 *Harr.* 151, was on a claim presented to the assignee for a dividend of the estate of an insolvent who had assigned for the benefit of credi-

Smith v. Abbott.

tors. But even this case is decided expressly upon other grounds. The court first expose radical errors, and say that for those errors, the decision below must be reversed. It is then added, that there is a fatal objection to the affidavit, that it was sworn before a Justice of the Peace of the County of Philadelphia, in Pennsylvania; and the Chief Justice goes on to say, that where the statute does not say before whom an affidavit is to be taken, it must be taken before a Judge of the Court that has jurisdiction of the subject matter, and is to pass upon its sufficiency and effect, and that this affidavit being taken before *a foreign officer*, must be treated as a nullity.

Without expressing any opinion on this point, it is enough for me to say that, this may be all right, and yet not affect the present question. The affidavit was held bad because taken before a *foreign officer*—it was not sworn to in this state, nor could perjury be assigned upon it here. So too, I admit that, where the statute does not direct before whom the affidavit is to be taken, it must be before a judge of that court having jurisdiction of the subject matter, and which is to pass upon its sufficiency and effect. But it does not follow, nor did the Chief Justice, I apprehend, mean to extend this principle to all cases where, upon any contingency, the effect or sufficiency of an affidavit may come in question in court: And I shall show hereafter that, the present affidavit is not one embraced within the principle; although the inference from the language of the Chief Justice may be, that he thought otherwise. There is I contend, nothing decided in this case of *Scull* v. *Alter*, adverse to the position, that this affidavit was rightly taken before a justice of the peace.

The above are the only cases in this court where this principle has been called in question; and I repeat that no decision has ever been made upon this ground. We are now called upon for the first time, to act upon this principle exclusively, and reject this affidavit as an utter nullity. If legal principles demand it, (however great the injury to the creditor) it must be done, but not otherwise.

In the first place I would observe, that subsequent to the intimations of this court above alluded to, as to the want of power in justices of the peace to administer oaths, &c. and in view thereof, the legislature of this state, have declared by an act,

passed Feb. 14, 1839, that they shall have power to administer oaths &c. in all cases, with a few named exceptions, running thereby (with deference be it said,) into the other extreme. This at all events is declaratory of what the legislature conceive ought to be or to have been the proper duties and powers of a justice of the peace.

I do not mean to contend that prior to the act referred to a justice could take an affidavit in any matter *pending in court,* or to be used by the affiant as the *basis of any motion or proceeding therein.* In all such cases, in the language of *Scull* v. *Alter,* it must be before a judge of the court that has jurisdiction of the subject matter, and is to pass upon its sufficiency and effect. But my position is, that this affidavit was not made in any matter *in* court, or to be read as the basis of any motion or proceeding therein ; and that in this, and like cases, where a statute required an oath to be taken, insulated in its character, but did not say before whom, it was well taken before a justice of the peace, even prior to the act of Feb. 14, 1839.

The third section of the act, *Rev. L.* 766, enacts, " when any executor or administrator shall by application in writing represent to the Orphans' Court of the proper county, on oath or affirmation taken or made before any of the *judges of said court,* that the personal and real estate of the decedent is insufficient to pay the debts &c., the said court shall thereupon direct public notice to be given that the creditors " exhibit to such executor or administrator, under oath or affirmation, their claims and demands against the estate," within the time therein limited &c. The object of this rule of court, is merely to aid the executor or administrator in the more speedy settlement of the estate, not to substitute the court wholly in his place and stead. The only part of this proceeding which is intended as the basis of judicial action, is the affidavit of the insufficiency of the decedents' estate, and there the act expressly requires that it be taken before one of the judges of the court. While it is provided in the same section, that the exhibition of the demand, to the executor or administrator, shall be under oath or affirmation, only, without stating before whom. The section itself makes the obvious distinction between that which is intended as the basis of a proceeding in court, and that which is wholly out of it.

The sixth section provides that the executor or administrator make report to the court, of the several claims exhibited &c., specifying the amount at the time of the report and whether by judgment, decree, bond, note, book account, or otherwise. But it does not require that this report show, and in practice it never does show, the affidavits by which the demands are verified. The court never inspect or pass upon those affidavits, either directly or indirectly, except where, under the sixth section, exceptions are filed against the allowance of some particular claim. It is only upon that contingency, and in reference to that claim, that the court is authorized to proceed and hear " the proofs and allegations in the premises, &c." And it may well be doubted even then, whether the legislature intended to authorize the creditors severally to pick and hawk at each other's affidavits, thus creating a general scramble for the estate. Where no exceptions are made, it is enacted, that demands and claims shall be deemed as justly due ; and the allowance thereof is consequently by force of legislative enactment, and not of judicial decisions. Surely, a mere contingency, that an affidavit may be brought before the court by some person who may take an exception to the claim, does not prove that it is originally a proceeding *in* court or intended as the basis of such. In the case cited from 2 *Green*, 266, the Chief Justice takes this distinction, and holds rightly, that an affidavit to hold to bail, is not an affidavit taken in a proceeding in court, nor is it intended as the foundation of any proceeding therein. And yet the sufficiency of such an affidavit, then was and often is called in question, by those who take exceptions to it, and the court is required to pronounce upon it; precisely as the Orphans' Court was required to pronounce upon the sufficiency of this affidavit, upon exceptions made under the statute. An affidavit for bail, is in truth, a stronger case than this, for though not the basis, it is the initiatory step to a regular course of judicial proceeding, which this is not. The affiant in this matter, never proceeds upon it, with any ultimate object. He never solicits judicial action in reference to it. It is an isolated affidavit intended only to verify a demand, as required by the statute, and such has, in all times past, been the judgment of the profession concerning it. Though the principle has always been

well understood, that a justice of the peace could take no affidavit to be read in a matter pending in court, or as the basis of any motion or proceeding therein, yet he has uniformly been called upon by the profession, to take affidavits in cases under this act, and such as are analogous to it.

Assuming therefore that this affidavit is wholly disconnected with judicial proceedings, I have no doubt that it was properly administered by a justice of the peace. I hold that he had the power, prior to the act of Feb. 14, 1839, to administer oaths in such cases as an incident to his office.

In proof of this, I again refer to the long continued and uniform practice, without doubts suggested as to the powers of the justice, either by counsel or court. There is little hazarded in saying that at least eleven out of twelve of all the affidavits in such cases which have been taken in this state, have been taken by justices of the peace. This practice is certainly entitled to great weight, even though we may be unable to trace it back clearly to its origin.

For centuries past, justices of the peace have administered oaths in England : and this right has not been a common law right limited to matters affecting the public peace only.

There is a general error, I apprehend, on this subject. A justice of the peace is not, and never was an officer at the common law, strictly. They were first created by *stat.* 1 *Ed.* 3 *cap.* 16. This statute provides " that for the better keeping and maintenance of the peace, the King willeth that in every county, good men and lawful, which be no maintainers of evil, or barrators in the county, shall be assigned to keep the peace." Prior to this act, *conservators* of the peace had been elected by the people. They were common law officers, and their duties as such, were to prevent and arrest for breaches of the peace in their presence, *Dalt. C.* 1, but not to arraign and try for them, 2 *Burn's Just.* 577. So there are many official personages who had this common law right, as Sheriffs, Constables, Coroners, &c. and yet none of these, as such, could administer oaths.

The statute referred to, gave to justices of the peace, all the common law powers which *conservators* had exercised, and subsequent acts greatly enlarged them, 2 *Burn's Justice,* 565 ; 3 *Bac. Ab. letter b. p.* 287 ; but they have not as is held in the English

books, any *jurisdiction*, save that which statutes give them, *Salk.* 406, *pl.* 2; 3 *Bac. Ab.* 286. And yet in England, as well as here, they are accustomed in a great variety of instances, to administer oaths as well in civil, as in criminal matters, without any direct statutory authority. In 2 *Burn's Justice*, 225, 6, it is said, " no-act of Parliament gives a special power to adminster the oath of office to a gauger in the excise, a commissioner of sewers, or a Sheriff's bailiff; to a soldier enlisted in his Majesty's forces; to an out pensioner of Chelsea hospital in order to receive his pension ;" and other cases are enumerated, in all of which, and many besides, it is said, oaths " are directed to be administered by the respective acts of Parliament, which acts nevertheless have no clause authorizing the justices to administer the said oaths "—and yet, in all these and many like cases, justices do administer these oaths, as incident and necessarily annexed to their office; and the author adds, " if they cannot be supported on that foundation, it is easy to conjecture what must be the consequence." I am aware that the power of a justice to administer an oath at all, unless specially authorized, was once much questioned, but it is too late in the day, to look back nicely into the law, and retrace our steps on this point. Nor is it desirable. In this country, and particularly in this State, the powers of these officers, have been vastly enlarged, more particularly in matters of a civil nature, and their right to administer affidavits, has been repeatedly recognized. In *Walker, et al.* v. *Bamber, et al.* 8 *Sergt. & R.* 61. Tilghman, C. J. held that an affidavit of debt, made before a justice of the peace in England, was sufficient to hold to bail in Pennsylvania; and that on general principles; for in that State, they then had no rule of court, or act of Assembly, on the subject. In the case of *Wood* v. *The Jefferson County Bank*, 9 *Cowen*, 194, the same question was presented as is now before this court. By their act of incorporation, the Bank was required to do certain matters as a pre-requisite to its going into operation, and of the due performance of which, oath or affirmation was to be first made, but the statute did not say before whom. The affidavit was in fact taken before a justice of the peace, and the same objection afterwards made thereto, as is insisted on here, to wit : that a justice of the peace had no authority either at common law or by statute, to

administer the oath. Savage, Ch. J. in delivering the opinion of the court, overruled the objection, and held that the affidavit might be taken before any magistrate or officer having power to administer an oath. This is a case directly in point.

Subsequent to the dicta to be found in our reports, this question has been before this court, in the case of *The New Jersey Rail Road Company* v. *Suydam,* and in another case, v. *Graham ats.* of *the same plaintiffs.* In the latter case argued in the term of February last, the question was raised on the part of the plaintiffs in *Certiorari,* who were seeking in this court to set aside an assessment of commissioners.

The act required that the commissioners, before proceeding in the performance of their duties, be sworn to execute them faithfully ; but it was not stated before whom ; and the affidavits were in fact taken by a justice of the peace. The same objection was urged, but the defendant's counsel, when about replying, was stopped by the court. They were all satisfied there was nothing in the objection.

Other cases may doubtless be found, but these I apprehend, settle the question. I have been induced to go over this matter at greater length than I originally intended, from the apparently unsettled state in which the question has heretofore been left, by the decisions of this court.

The order and decree of the court below, must be affirmed.

HORNBLOWER, C. J. FORD, WHITE and NEVIUS, Justices, concurred.

*Decree affirmed.*

CITED *in Bennett* v. *Benson,* 1 *Dutch.* 169.